UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WASKAR PENA | ) | |
| | ) | |
| v. | ) | Cr. No: 05-137T |
| | ) | CA. No: 08-77T |
| UNITED STATES OF AMERICA | ) | |

**GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR OTHERWISE CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Comes now the United States of America, by an through its attorneys, Robert Clark Corrente, United States Attorney for the District of Rhode Island, and Adi Goldstein, Assistant U.S. Attorney, and hereby objects to the defendant's Motion to Vacate, Set Aside, or Otherwise Correct Sentence Pursuant to 28 U.S.C. § 2255 for the reasons stated in the accompanying memorandum.

Respectfully submitted,
UNITED STATES OF AMERICA

By its Attorneys,
ROBERT CLARK CORRENTE
United States Attorney

/s/ ADI GOLDSTEIN
ADI GOLDSTEIN
Assistant U.S. Attorney
RI Bar #6701
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
(401) 709-5000-Fax (401) 709-5001
email adi.goldstein@usdoj.gov

CERTIFICATE OF SERVICE

On this 31st day of March, 2008, I caused the Government's Objection to Petitioner's Motion To Vacate, Set Aside or Otherwise Correct Sentence, Continue The Defendant's Sentencing Pursuant to 28 U.S.C. Section 2255 to be filed electronically and it is available for viewing and downloading from the ECF system.

Notification by first class mail, postage prepaid:

Waskar Pena, # 05687-070
FCI Fort Dix
Federal Correction Institution
P.O. Box 2000
Fort Dix, NJ 08640

/s/ ADI GOLDSTEIN
ADI GOLDSTEIN
Assistant U.S. Attorney
RI Bar #6701
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
(401) 709-5000-Fax (401) 709-5001
email adi.goldstein@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WASKAR PENA | ) | |
| | ) | |
| v. | ) | Cr. No: 05-137T |
| | ) | CA. No: 08-77T |
| UNITED STATES OF AMERICA | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR OTHERWISE CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

## I. INTRODUCTION

The petitioner, Waskar Pena (Pena), filed a motion pursuant to 28 U.S.C. § 2255 on February 21, 2008 to vacate his sentence. Pena argues that his counsel was ineffective for the following reasons: (1) he waived petitioner's right to direct appeal, (2) he overlooked a sentencing guidelines amendment that would have resulted in a lower sentence, (3) he withdrew defendant's appeal without consultation, (4) he failed to argue that defendant's criminal history was over-represented, (5) he failed to argue that the defendant should be subject to a two-point, rather than a four-point, enhancement under section 3B1.1©, and (6) he failed to ensure that the Court properly considered all 18 U.S.C. § 3553 factors at sentencing. For the reasons set forth below, the government believes that the petition should be dismissed as it was filed outside the limitations period set by AEDPA, and that, in any event, the claims are wholly without merit.

## II. BACKGROUND

On December 11, 2005, the petitioner was arrested by agents of the Drug Enforcement Administration Task Force, Providence Field Office. The arrest marked the conclusion of a

lengthy investigation that included controlled purchases of cocaine by an informant, surveillance, electronic surveillance of two cellular telephones utilized by the petitioner, and the execution of a search warrant at petitioner's home. The wiretap investigation produced evidence that the petitioner was the leader of an organization distributing kilogram quantities of cocaine and large quantities of heroin in Providence, Rhode Island.

On October 31, 2005, the DEA obtained court-authorization to intercept the wire communications of Pena and others over Pena's T-Mobile cellular telephone, (401) 499-7936. That authorization was renewed after thirty days. In addition, on December 8, 2005, the DEA obtained authorization to intercept Pena's Nextel cellular telephone, (401) 427-5235. On December 10 and 11, 2005, the DEA intercepted a series of calls that indicated that Pena was expecting a delivery of cocaine from Lawrence, Massachusetts. Calls intercepted between co-defendant Alejandro Pujols and Pena indicate that Pujols was brokering the purchase of three kilograms of cocaine from "his guys" in Lawrence. The three kilograms turned into two after Pujols examined one of the kilos and determined that it was of poor quality. During the early afternoon hours of December 11, Pujols called Pena and informed him that he was on his way, and that the guys from Massachusetts were on their way. As a result, Pena communicated numerous times with co-defendant Cornelio Ozorio in order to line up the sale of the one kilogram of cocaine.

During the afternoon of December 11, 2005, surveillance observed all the actors converge at Pena's residence, 234 Gallatin Street, Providence, Rhode Island, in order to conduct the transaction. At approximately 4 p.m., agents were instructed to execute the search warrant at 234 Gallatin Street. As agents approached the building, they encountered Ozorio as he was leaving

the building. Task Force Agents stopped Ozorio and conducted a pat-down of his person. As they did so, a plastic wrapped kilogram of cocaine fell from under Ozorio's coat.

Agents then entered 234 Gallatin Street, which is a three-story, single family home, with a basement. On the first floor of the house, agents encountered co-defendant Eduardo Garcia, and members of the petitioner's family. In the basement, agents encountered Pena, Alejandro Pujols, and Zavala-Mayi. In plain view on the basement floor, agents located another kilogram of cocaine, a heat sealer, a digital scale, and packaging materials. After searching the basement for some time, agents located defendant Domingo Gonzalez hiding under a rug. After a brief struggle with the police, Gonzalez was arrested.

Further search of the house and garage also resulted in the seizure of 162 grams of heroin and over $10,000 in U.S. currency. The defendant was arrested and presented before Magistrate Judge Almond on December 12, 2005, whence he was ordered detained.

## III. TRAVEL OF CASE

On December 14, 2005, a federal grand jury for the District of Rhode Island returned a five-count Indictment charging the defendant with conspiracy to distribute 500 grams or more of cocaine, 21 U.S.C. §§ 846, and 841(a)(1) & (b)(1)(B) and 18 U.S.C. § 2 (Count I), distributing and possessing with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B) and 18 U.S.C. § 2 (Count II), and possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B) (Count III).

As set forth above, the evidence against the defendant was overwhelming. There were numerous recorded conversations between Pena, the co-defendants, and other parties evidencing

his knowing and intentional participation in a conspiracy to distribute cocaine and heroin. The search warrant at Pena's house corroborated the conversations overheard on the wiretap and resulted in a significant seizure of narcotics and currency. Following discovery and extensive plea negotiations, the defendant entered into a plea agreement with the United States. Under the terms of the plea agreement, the government agreed to recommend a term of imprisonment at the low-end of the guideline range determined by the Court. However, the government reserved the right to recommend any sentence in the event that the defendant moved for a sentence blow the guideline range or for a downward departure. (Plea Agreement at 2a). The government agreed to recommend a three-level reduction in the offense level for acceptance of responsibility. The defendant and the government also stipulated to the drug quantities, to the fact that the defendant had been previously convicted of a felony drug offense, and to the fact that the defendant was an organizer or leader under guideline section USSG §3B1.1©. (Plea Agreement at 2e). The paragraph setting forth the parties' stipulations also included the provision that "Both the United States and Defendant reserve their rights to argue and present evidence on all matters affecting the guideline calculation." (Plea Agreement at 2e(v)). The Plea Agreement also provided that, in addition to the waiver of trial rights, the defendant was waiving Defendant's right to file a direct appeal if the sentence imposed by the Court was within the guideline range. (Plea Agreement at 10.) Finally, the plea agreement contained the customary language setting forth the fact that "Defendant understands that the Court alone makes all sentencing decisions, including the application of the guidelines and the sentence to be imposed. The Court is not bound by the parties' stipulation of fact, offense level adjustments, or the government's recommendation. The defendant understands that the . . . Guidelines are advisory . . ." (Plea Agreement at 9).

On April 5, 2006, the defendant appeared before this Court and entered a plea of guilty to Counts I-III of the Indictment. The Court conducted a lengthy and thorough inquiry of the defendant with respect to the defendant's understanding of the terms of the plea agreement, the rights he was giving up, his waiver of appeal, and the defendant's understanding that the Court was not a party to the plea agreement and was not bound by it. The defendant indicated that he agreed and understood the terms of the plea agreement. The Court also inquired whether the defendant was satisfied with counsel to which the defendant responded affirmatively. Following this colloquy and the government's statement of the facts, the defendant pleaded guilty.

Subsequently, a presentence report (PSR) was prepared by the United States Probation Office. The PSR calculated defendant's base offense level as 32 based on the quantity of cocaine, heroin, and currency seized in connection with this case. The PSR also adjusted defendant's offense level by four points based the fact that he was an organizer or leader of a criminal activity that involved five or more participants, USSG 3B1.1(a). This was two levels higher than stipulated to in the plea agreement. After a three level reduction for acceptance of responsibility, the Total Offense Level was calculated as 33.

The PSR calculated defendant's criminal history as Category II based on two driving without a license convictions from March 6, 2003. (PSR at 30 and 31). In addition to those two conviction, the PSR also listed two other driving without a license convictions from 2002 and 2003 which were not counted. (PSR at 28 and 29). The PSR also listed defendant's 1994 conviction for possession of a controlled substance. This conviction did not count towards defendant's criminal history score because of its age.

The PSR calculated defendant's sentencing range as 151-188 months. It should be noted

that the mandatory minimum sentence in this case is 10 years while the maximum is life imprisonment.

On July 14, 2006, the defendant appeared before this Court and was sentenced to 151 months imprisonment, a sentence at the low end of the guideline range. At sentencing, the Court inquired of both defense counsel and the government as to the applicability of the four-level enhancement for the position of leader or organizer. After hearing argument, the Court found that the enhancement was applicable. While the government has not obtained a transcript of the sentencing hearing, it is the government's recollection that defense counsel presented to the court a narrative of the defendant's life and family obligations. The Court also had the benefit of numerous letters written on behalf of the defendant by relatives and members of the community. The Judgement of Conviction was entered on July 24, 2006.

Defendant filed notice of appeal on August 8, 2006. On November 13, 2006, defendant filed a motion to withdraw the appeal. The Motion, which was filed by defendant's counsel, John Bevilacqua, was accompanied by a written note signed by the defendant indicating that he did not wish to pursue an appeal. The mandate was issued on November 28, 2006. On December 3, 2007, defendant filed a pro-se motion requesting permission to reopen the appeal. This motion was denied by the First Circuit on January 15, 2008.

## IV. GOVERNING LAW

### A. MOTIONS UNDER 28 U.S.C. § 2255

Section 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws

> of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion under 28 U.S.C. § 2255 is a substitute for habeas corpus. Relief is available under this section only if the same relief is available under the writ. Hill v. United States, 368 U.S. 424, 427 (1962). The grounds justifying relief under § 2255 are limited. Section 2255 does not grant to a defendant the right to retry cases in which he has been adjudged guilty. Taylor v. United States, 177 F.2d 194, 195 (4th Cir. 1949).

In United States v. Addonizio, 442 U.S. 178, 184-185 (1979), the Supreme Court Stated:

> It has, of course long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment ... [U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited... The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice'... Similar limitations apply with respect to claimed errors of fact.

See also Davis v. United States, 417 U.S. 333, 346 (1974).

A collateral attack may not substitute for an appeal, and presents a higher threshold that a petitioner must clear in order to bring a claim. United States v. Frady, 456 U.S. 152, 165 (1982); Dirring v. United States, 370 F.2d 862, 865 (1st Cir. 1967). A defendant cannot raise in a federal habeas proceeding issues which he failed to raise at trial or on direct appeal absent a showing of cause for the failure and a showing of prejudice. Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994). Once a defendant's chance to appeal has been exhausted, there is a presumption that the conviction is fair and final. As the Supreme Court has pellucidly explained in United States v.

Frady, "[o]nce the defendant's chance to appeal has been waived or exhausted ... we are entitled to presume he stands fairly and finally convicted, especially when, as here, he had already has a fair opportunity to present his federal claims to a federal forum." Frady, 456 U.S. at 164, 102 S.Ct. 1584. Moreover, a habeas motion may not be used to relitigate an issue that was raised and considered on direct appeal without some highly extraordinary circumstance, such as an intervening change in the law. Davis v. United States, 417 U.S. 333, 345, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citations omitted); Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) ("Claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.").

The Supreme Court has made clear that cause is measured by a stringent standard of diligence. See, e.g., Coleman v. Thompson, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("cause" is "something external to the petitioner" that "cannot be fairly attributed to him"; "[a]ttorney ignorance or inadvertence is not 'cause' ") (emphasis in original); Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)("[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim."). In this respect, the existence of cause to excuse a procedural default is dependent upon the petitioner's ability to show that some objective factor external to the defense impeded compliance with the procedural rules. Murray, 477 U.S. at 488,

106 S.Ct. 2678. A showing that the factual or legal basis for a claim was not reasonably available to counsel or that interference by some officials made compliance with the procedural rules impracticable, would constitute cause under this standard. Strickler v. Greene, 527 U.S. 263, 283, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

A showing of prejudice must be made along with the adequate showing of cause. Reed v. Farley, 512 U.S. 339, 358, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). In order to show prejudice, the petitioner must show a reasonable probability that the result of the trial would have been different had the claimed errors, which were procedurally defaulted, not occurred. Strickler, 527 U.S. at 289-90, 119 S.Ct. 1936. Furthermore, "the resulting prejudice must create an actual and substantial disadvantage, infecting [the petitioner's] entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170, 102 S.Ct. 1584. If a defendant fails to establish "cause" and "prejudice" to excuse a procedural default, he can obtain collateral review of his constitutional claim only by demonstrating that the constitutional error "has probably resulted in the conviction of one who is actually innocent." Bousley, 523 U.S. at 623, 118 S.Ct. 1604. The Supreme Court has emphasized that " 'actual innocence' means factual innocence, not mere legal insufficiency." Id. To establish actual innocence, petitioner must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327-28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quotations and citation omitted).

B. ENTITLEMENT TO A HEARING

Section 2255 provides that the court should hold a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 Rule 4(b) of the rules governing Section 2255 proceedings for the United States District

Courts provides in pertinent part that "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified." Id. The burden is on the movant to prove by a preponderance of the evidence that he is entitled to a hearing. Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1998). In considering a motion under § 2255, the district court should accept the movant's allegations as true "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than facts." United States v. Moscruera, 845 F.2d 1122, 1124 (1st Cir. 1988).

The First Circuit has stated that no hearing is required where the § 2255 motion: (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case. Moran v. Hogan, 494 F.2d 1220, 1222, (lst Cir. 1974); United States v. Carbone, 880 F.2d 1500, 1502 (lst Cir.), cert. denied, 493 U.S. 1078 (1990). Moreover, the First Circuit also held that "no hearing is required where the district judge is thoroughly familiar with the case." Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988); Panzardi-Alvarez v. United States, 879 F.2d 975 n.8 (lst Cir. 1989). A district judge's personal observation and recollection of the events at trial may, supplement the record. Gregory v. United States, 585 F.2d 548, 550 n.1 (lst Cir 1978); United States v. DiCarlo, 575 F.2d 952, 954-955 (lst Cir. 1978).

In the instant case, no evidentiary hearing is required because all of petitioner’s claims can be resolved by reference to the record, and where the record does not exist by relying on the

presumption of regularity and on the memory of the sentencing judge.[1]

C. TIMELINESS OF THE PETITION

18 U.S.C. § 2255 was amended to provide in pertinent part:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of --
> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by government action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 (emphasis added). Under the AEDPA, if a petitioner is late, and no exceptions apply, he is simply out of luck. United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir.), cert. denied, 531 U.S. 878 (2000) ("Foreclosing litigants from bringing their claim because they missed the filing deadline by one day may seem harsh, but courts have to draw lines somewhere [and] statutes of limitation protect important societal interests"); Celioski v. United States, 2001 WL 1298835 (1st Cir. 2001) (unpublished decision) (affirming district court's sua sponte dismissal of petitioner's habeas where is was untimely and no equitable tolling applied).

[1]The government will make additional sentencing transcripts available to the court should it deem it necessary for its review of the matter.

D. INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court set forth the two-prong analysis for assessing claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The party advancing the claim must show: 1) that his attorney's performance fell below an objective standard of reasonableness, and 2) that he was prejudiced as a result of his attorney's deficient performance. Id.; United States v. Caggiano, 899 F.2d 99, 101 (1st Cir. 1990). A defendant must meet the heavy burden imposed by the law for each of these prongs, to make a successful ineffective assistance of counsel claim. Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). The defendant must establish that counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir.), cert. denied, 115 S. Ct. 517 (1994).

Courts are deferential in reviewing an attorney's performance: an attorney must only provide reasonably effective assistance. Singleton, 26 F.3d at 238. The court must scrutinize counsel's conduct on the "... totality of the circumstances before it, and making every effort to eliminate the distorting effects of hindsight." Id. (quoting United States v. Nantel, 938 F.2d 302, 309-310 (1st Cir. 1993)). There is a "strong presumption that conduct falls within this wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1995)). Counsel need not jump through every conceivable hoop, nor engage in futile exercises, in order to be considered effective. United States v. Cronic, 466 U.S. 648, 656 n.19 (1984).

Even if the defendant proves that counsel's performance was objectively unreasonable, he

cannot prevail unless he can also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Perron v. Perrin, 742 F.2d 669, 673 (1st Cir. 1984)(quoting Strickland, 466 U.S. at 693-694)(emphasis supplied). Thus "the court must not only find that defense counsel's performance was deficient, but that it was so prejudicial as to undermine confidence in the outcome." Strickland, 466 U.S. at 689. If a claim of ineffective counsel can be disposed of on the ground of lack of prejudice, the court should do so. Perron, 742 F.2d at 673.

## V. ARGUMENT

### A. The Petition Should be Dismissed as Untimely

In this case, viewed in the light most favorable to the defendant, the conviction became final on November 28, 2006, when the First Circuit issued its mandate. The defendant waived his right to appeal initially, filed an appeal, and then withdrew it. Accordingly, he would not have been entitled to file a petition for certiorari with the Supreme Court. Defendant did not claim to the First Circuit that he did not authorize his defense attorney to withdraw his appeal. He makes an oblique claim now to this effect but it is not supported by any evidence and, given that defendant misrepresents the date of when his appeal was withdrawn, this claims lacks any credibility. Accordingly, defendant should have filed his 2255 petition within one-year from the date on which the First Circuit Mandate was issued, that is November 28, 2007.

It should also be noted that none of the exceptions noted in the statute apply to this case. Defendant has not raised any of the exceptions to the strict time limits of § 2255 in his Petition, nor does it appear on the face of his petition that any of the exceptions apply. Accordingly, the Petition should be dismissed as untimely.

B. Counsel was not Ineffective

Although Petitioner's motion should be dismissed for untimeliness, even if the Court were inclined to review it on the merits, it should deny it for failure to allege any error entitling the defendant to relief. The defendant has not proffered any objective basis for finding that his counsel was ineffective. First, his argument that counsel waived petitioner's right to appeal is without merit. The Court inquired of the defendant at the time of the change of plea hearing whether defendant understood this waiver. Defendant indicated that he understood it and that he agreed to it. The First Circuit has consistently upheld the constitutionality of appeal waivers in plea agreements, and such a waiver is entirely appropriate when done knowingly and voluntarily. See, e.g., United States v.McCoy, 508 F.3d 74, 77 (1st Cir. 2007). United States v. Teeter, 257 F.3d 14, 24-26 (1st Cir.2001). Defendant nevertheless filed an appeal and then directed his counsel to withdraw it on November 13, 2006. Defendant's statement that the appeal was withdrawn in November 2007 is simply false, as indicated by the First Circuit docket. This misstatement also suggests that defendant's claim that the appeal was withdrawn without his consent highly suspect. Defendant hand wrote a note to the First Circuit in which he instructed his attorney to withdraw the appeal in November 2006. He never claimed otherwise in his pro-se motion to re-open his appeal before the First Circuit on December 3, 2007. Accordingly, this argument is frivolous.

Second, defendant argues that he was prejudiced because of a change in the guidelines that would have resulted in a lower guidelines range. Again, defendant is mistaken. Defendant is correct in stating that his criminal history calculation was based on two convictions for driving without a license for which he received one year probation. The guidelines in effect when the

defendant was sentenced provided that those sentences counted because the sentence "was a term of probation of at least one year." USSG § 4A1.2 (c)(1) (Nov. 1 2006). This provision was amended effective November 1, 2007 (well after defendant's conviction became final) to provide that such sentences are only counted when a sentence of probation of "one year or more" was imposed. Amendment 709 (USSG §4A1.2 (c)(1) (Nov. 1 2007) . This amendment was not one of the amendments made retroactive under USSG § 1B1.10©. Accordingly, Pena is not entitled to relief. See United States v. Lopez-Pineda, 55 F.3d 693, 697n.3 (1st Cir.), cert. den'd, 516 U.S. 900 (1995); Desouza v. United States, 995 F.3d 323, 324 (1st Cir. 1993).

Third, the defendant is wrong in arguing that his criminal history was over-represented. As set forth in the preceding paragraph, defendant's criminal history was properly calculated under the guidelines in effect at the time. If anything, his criminal history was under-represented. There were two other convictions for driving without a license which were not counted. A 1994 felony drug conviction was not counted because of its age. Furthermore, this investigation revealed that the defendant made a living by drug-dealing. While he was charged and convicted of the narcotics seized from his house on December 11, 2005, the evidence collected during the course of this investigation revealed numerous instances where the defendant engaged in drug transactions. Accordingly, this conduct was not an aberration from an otherwise law-abiding life.

Fourth, petitioner is wrong to argue that counsel was ineffective because the Court ultimately accepted the PSR's finding that a four-level enhancement under USSG § 3B1.1(a) was appropriate. As set forth above, the plea agreement clearly advised the defendant that the Court was not bound by the parties' stipulation of facts. Defendant was aware that the government was free to inform the Court of all the facts relating to this case. It was not disputed that this

organization included more than five people (Cornelio Ozorio, Alejandro Pujols, Eduardo Garcia, Domingo Gonzalea, Chirstopher Zavala Mayi, and the defendant). It was also not disputed that Pena was in a supervisory position to at least one of those people (Cornelio Ozorio and Alejandro Pujols). While defendant's counsel attempted to argue against this adjustment, that he ultimately did not prevail does not render his assistance ineffective.

Fifth, the Court in this case sentenced the defendant under an advisory guideline range. While the Court was free to impose a sentence below the guidelines (as long as it was at least 120 months), it chose not to do so given the seriousness of the offense, the characteristics of the defendant, and the other factors set forth in 18 U.S.C. § 3553. The government recalls both the defendant and his counsel speaking to the Court about defendant's family . The Court also had the benefit of numerous letters from defendant's family. That the Court ultimately decided to impose a sentence that fell within the guidelines range does not render counsel's assistance ineffective.

## VI. CONCLUSION

For all the aforementioned reasons, the United States requests that the petitioner's motion be denied and dismissed.

Respectfully submitted,
UNITED STATES OF AMERICA

By its Attorneys,
ROBERT CLARK CORRENTE
United States Attorney

/s/ ADI GOLDSTEIN
ADI GOLDSTEIN
Assistant U.S. Attorney
RI Bar #6701
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
(401) 709-5000-Fax (401) 709-5001
email adi.goldstein@usdoj.gov

CERTIFICATE OF SERVICE

On this 31st day of March, 2008, I caused the Government's Memorandum of Law in Support of Its Objection to Petitioner's Motion To Vacate, Set Aside or Otherwise Correct Sentence, Continue The Defendant's Sentencing Pursuant to 28 U.S.C. Section 2255 to be filed electronically and it is available for viewing and downloading from the ECF system.

Notification by first class mail, postage prepaid:

Waskar Pena, # 05687-070
FCI Fort Dix
Federal Correction Institution
P.O. Box 2000
Fort Dix, NJ 08640

/s/ ADI GOLDSTEIN
ADI GOLDSTEIN
Assistant U.S. Attorney
RI Bar #6701
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
(401) 709-5000-Fax (401) 709-5001
email adi.goldstein@usdoj.gov